UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Questar Data Systems, Inc.,

             Plaintiff,

v.                                                    Civ. No. 06-471 (JNE/JJG)
                                                      ORDER
Service Management Group, Inc.,

             Defendant.

---

Robert T. Kugler, Esq., and David D. Axtell, Esq., Leonard, Street and Deinard, PA, appeared for Plaintiff Questar Data Systems, Inc.

Surya Saxena, Esq., Dorsey & Whitney LLP, and Patrick Kenney, Esq., Lathrop & Gage L.C., appeared for Defendant Service Management Group, Inc.

---

This is a lawsuit between two competitors in the customer satisfaction research and consulting business. During the course of discovery in a separate lawsuit in Missouri, Service Management Group, Inc. (SMG), issued a subpoena to Questar Data Systems, Inc. (Questar), seeking confidential and proprietary business information. Questar contends SMG had no legitimate basis for issuing the subpoena, and only did so to gain a competitive business advantage. Questar brought this action against SMG for abuse of process, interference with contract, and unfair competition. Before the Court are SMG's Motion for Summary Judgment and Questar's Motion to Dismiss Count Two (Interference with Contract). For the reasons set forth below, the Court grants Questar's motion and grants in part and denies in part as moot SMG's motion.

## I.      BACKGROUND

SMG and Questar are competitors in the customer satisfaction research and consulting business. Brian Wunder is SMG's former Executive Vice President. SMG terminated Wunder's

employment and Wunder went to work for Questar.  After Wunder's departure, SMG failed to make certain severance and profit-sharing payments to Wunder.  Wunder filed a lawsuit against SMG in Missouri state court alleging SMG had breached his employment agreement.  In its Answer, SMG raised several affirmative defenses, including prior breach of the employment agreement by Wunder.  SMG also asserted counterclaims against Wunder for breach of contract, misappropriation of trade secrets, and breach of fiduciary duty (collectively "the Counterclaim").

As part of discovery in the Missouri lawsuit, and pursuant to Missouri Rule of Civil Procedure 57.09, which authorizes discovery from a non-party, SMG sought to obtain documents and information from Questar.  SMG sought a subpoena *duces tecum* (Subpoena) from the Minnesota state court in Dakota County, a court with jurisdiction over Questar, and the Subpoena was issued.  Questar resisted the Subpoena and asked the Minnesota state court to release Questar from its obligation to respond.  The Minnesota state court denied Questar's request and ordered Questar to fully comply with the Subpoena.  The court also issued a protective order governing the production and use of Questar's confidential and proprietary information.

After the close of discovery in the Missouri action, and approximately eleven days before the scheduled trial date, SMG dismissed the Counterclaim against Wunder.  SMG's dismissal was filed after the Missouri court heard oral argument on Wunder's Motion for Partial Summary Judgment, but before the court issued its order on the motion.  On February 25, 2007, the Missouri court granted Wunder's motion for partial summary judgment on SMG's affirmative defenses concerning prior material breach of the employment agreement.[1]

---

[1]     On April 9, 2007, the Missouri litigation concluded with a bench trial on the issue of damages only.  This outcome arose after the court entered default judgment against SMG as a

Because it expended a large amount of money resisting and ultimately complying with the subpoena issued in connection with the Counterclaim that was voluntarily dismissed by SMG, Questar sued SMG alleging abuse of process, interference with contracts, and unfair competition.  Questar contends SMG's assertion of the Counterclaim in the Missouri action and subsequent issuance of the Subpoena to Questar were improper and motivated only by SMG's desire to obtain access to Questar's confidential and proprietary information in order to gain a competitive business advantage and to interfere with Questar's business relationships.

Questar filed this action in state court.  SMG removed the case to federal court pursuant to 28 U.S.C. §§ 1332, 1441.  SMG now moves for summary judgment.  Questar moves to voluntarily dismiss Count Two with prejudice.

## II.      DISCUSSION

### A.      Questar's Motion to Dismiss Count Two

Questar asserts that the discovery process has not yielded sufficient evidence of SMG's interference with Questar business contracts to warrant continued pursuit of the interference with contract claim.  Pursuant to Federal Rule of Civil Procedure 41(a)(2), Questar seeks to voluntarily dismiss Count Two with prejudice and requests an order directing that each party bear its own costs and fees associated with Count Two.  SMG does not oppose the dismissal of Count Two, but objects to the request regarding costs and fees.  The Court grants Questar's motion to the extent Count Two of the Complaint is dismissed with prejudice.  However, the Court declines to rule on the issue of costs and fees associated with Count Two at this time.

---

sanction for its "lack of candor" and "gross violation of the court's order" in relation to SMG's discovery obligations in the Missouri lawsuit.

**B.      SMG's Motion for Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*1.      Abuse of Process*

Questar alleges that the prior breach affirmative defenses and the Counterclaim asserted by SMG against Wunder in the Missouri action (upon which the issuance of the Subpoena to Questar was based) were meritless from the outset. Questar claims SMG asserted the defenses and the Counterclaim for the sole purpose of obtaining the ability to subpoena Questar's confidential and proprietary business information and trade secrets to gain a competitive advantage. Questar claims the assertion of the Counterclaim in order to obtain and use the power to subpoena Questar was improper and an abuse of process by SMG. [2]

---

[2]      In its Memorandum in Opposition to SMG's Motion for Summary Judgment, Questar suggests for the first time that SMG was also improperly motivated by a desire to personally harass Wunder. Questar argues SMG sought to harass Wunder in order to reduce his

Minnesota law applies to the substantive claims in this diversity action.  *See Archer v. Pavement Specialist, Inc.*, 278 F.3d 845, 846-47 (8th Cir. 2002).  Under Minnesota law, the tort of abuse of process has two elements:  (1) the existence of an ulterior purpose; and (2) the act of using the process to accomplish a result not within the scope of the proceedings in which it was issued, whether or not the result might otherwise be lawfully obtained.  *Hoppe v. Klapperich*, 28 N.W.2d 780, 786 (Minn. 1947); *Vandanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1057 (D. Minn. 2000).  "The gist of such an action is the misuse or misapplication of the process, after it has once been issued, for an end other than that which it was designed to accomplish."  *Behrendt v. Rassmussen*, 47 N.W.2d 779, 784 (Minn. 1951).

### a.    Ulterior Purpose

To demonstrate SMG's ulterior purpose, Questar presents the testimony of Andrew Fromm, SMG's President and CEO.  Questar contends Fromm admitted SMG lacked a credible basis for asserting the Counterclaim when he was unable to specifically identify which documents Wunder improperly removed from SMG in violation of his employment agreement.  Contrary to Questar's assertions, Fromm's deposition testimony does not contain this admission.

Fromm's testimony, read in context, demonstrates SMG's belief that Wunder breached his employment agreement when he improperly removed documents relating to a business known as Sonic.  Based on his belief that Wunder improperly removed the Sonic documents, Fromm presumed Wunder had also improperly removed other SMG documents.  Only when pressed to specifically identify what other documents Wunder removed from SMG did Fromm

---

productivity at Questar for the purposes of causing financial damage to Questar.  While the Court is willing to broadly read the Complaint to include allegations that SMG sought to obtain Questar's confidential and proprietary documents by asserting the frivolous Counterclaim, the Court is unwilling to broaden its reading to include allegations of harassment of Wunder. Allegations of harassment are not pleaded in the Complaint.

admit he could not do so.  Fromm testified that he authorized the assertion of the Counterclaim in

the Missouri litigation because he believed Wunder had breached his contract with SMG by,

among other things, taking SMG documents.  SMG then sought issuance of the Subpoena for the

purpose of ascertaining what SMG information appeared in Questar's documents and how

Questar was using that information.

Questar has failed to present specific facts disputing SMG's belief that Wunder

improperly removed Sonic documents from SMG.  The fact that Fromm could not identify

additional SMG documents removed by Wunder does not raise a material dispute regarding

Fromm's subjective belief that Wunder removed the Sonic documents in violation of the

employment agreement.  Moreover, in its order granting partial summary judgment to Wunder

on SMG's prior breach defenses, the Missouri court expressly states "Plaintiff [Wunder] claims

he removed a file relating to Sonic and the Federal Reserve."[3]  Thus, the undisputed evidence is

that Fromm legitimately believed Wunder improperly removed Sonic documents, and possibly

others, from SMG in violation of his employment agreement.

SMG also submitted the affidavit of Mary Widmer, SMG's Chief Strategic Officer.

According to Widmer, SMG asserted the prior breach defenses in the Missouri action because it

believed Wunder breached his employment agreement by soliciting or servicing SMG's clients

or prospective clients once at Questar, and by removing confidential, proprietary, and trade

secret information from SMG.  SMG believed it was relieved from any obligation to pay

compensation to Wunder because of his prior breaches of the agreement, and believed the

---

[3]     The court then determined Wunder's return of the files upon request coupled with SMG's
inability to specifically identify other files removed by Wunder amounted only to speculation by
SMG that Wunder had indeed removed other files.  The court concluded as a matter of law that
Wunder's taking and returning of files did not amount to a material breach of the employment
agreement.  On this basis, the court awarded Wunder partial summary judgment on the prior
breach defenses.

discovery of documents and information from Questar was necessary because Wunder's breaches occurred during his employment with Questar.  Widmer states SMG sought discovery from Questar for the purpose of defending itself in the Missouri litigation, and had no ulterior purpose in seeking discovery from Questar.

Questar has not come forward with specific facts that directly rebut Widmer's testimony.  Instead, Questar urges the Court to infer an ulterior purpose from the outcome of various pretrial proceedings in the Missouri litigation.  For example, Questar contends SMG's voluntary dismissal of the Counterclaim eleven days prior to the scheduled trial date in the Missouri action is inferential evidence of SMG's ulterior purpose.  Questar claims this "last minute" dismissal demonstrates SMG initially asserted the Counterclaim for the sole purpose of obtaining subpoena power over Questar in order to obtain its confidential and proprietary business information.

Questar's inference is not a reasonable one.  The litigation between SMG and Wunder was filed in Missouri state court and was, therefore, governed by the Missouri Rules of Civil Procedure.  Rule 67.02 governs voluntary dismissals and their effect.  Pursuant to Rule 67.02(a), a litigant may dismiss a civil action "without order of the court anytime (1) prior to the swearing of a jury panel for the voir dire examination, or (2) in cases tried without a jury, prior to the introduction of evidence at trial."  Mo. R. Civ. P. 67.02(a).

Thus, when a party seeks to voluntary dismiss claims pursuant to Rule 67.02 on or near the eve of trial, the filing does not necessarily arouse suspicions of procedural abuse by the party seeking dismissal.  Nor does it warrant concerns of prejudice to the non-dismissing party when a voluntary dismissal without prejudice is filed on or near the eve of trial.  Questar offers only speculation as to the reasons for SMG's voluntary dismissal of the Counterclaim.  Under these circumstances, drawing an inference of ulterior purpose from SMG's voluntary dismissal of the

Counterclaim shortly before the scheduled commencement of trial in the Missouri action is not reasonable. *See P.H. v. Sch. Dist. of Kansas City, Mo.*, 265 F.3d 653, 658 (8th Cir. 2001) (indicating the summary judgment standard entitles the non-moving party to all reasonable inferences, but the non-moving party is not entitled to inferences that may only be drawn by "resort[ing] to speculation").

It is also unreasonable for the Court to infer a lack of any basis for SMG's assertion of the Counterclaim from the Missouri court's grant of partial summary judgment in favor of Wunder on SMG's prior breach defenses.  The dismissal of a party's claims following a period of discovery and investigation is both common and useful in civil litigation and the practice is supported by the civil rules.  *See, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (stating "the simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"). The mere fact that SMG failed to obtain evidence during discovery in the Missouri action sufficient to prevail on its defenses and the Counterclaim does not automatically cast a cloud of suspicion over SMG's motives and purposes for asserting its defenses and the Counterclaim or for seeking discovery in support thereof.

In response to a motion for summary judgment, the non-moving party "must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." *FDIC v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997) (citations and quotations omitted).  Questar has presented nothing more than a lengthy narrative of the proceedings in the Missouri litigation that is cast in terms of speculation and conclusory allegations regarding SMG's ulterior purpose of asserting baseless claims and defenses in order to acquire Questar's confidential and proprietary business information.   This evidence is insufficient to defeat

summary judgment. *See Helfter v. United Parcel Serv. Inc.*, 115 F.3d 613, 616 (8th Cir. 1997) (holding conclusory statements, standing alone, are insufficient to withstand properly supported motion for summary judgment).

Questar next argues SMG had an ulterior purpose in issuing the Subpoena. Questar claims SMG issued the Subpoena for the sole purpose of obtaining a competitor's business information to gain an unfair business advantage. A Minnesota state court issued the Subpoena, and the Minnesota Rules of Civil Procedure thus govern this Court's examination of its issuance. As with a party's pleadings, the propriety of a party's discovery is not evaluated on the basis of whether or not the requesting party ultimately prevails on its claims or defenses. Instead, Minnesota's procedural rules permit discovery by a party if the discovery sought is "relevant to the subject matter involved in the pending litigation, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of the other party." Minn. R. Civ. P. 26.02.

Minnesota's procedural rules include safeguards designed to protect non-parties like Questar from overly burdensome or harassing discovery pursuits by litigants. For example, a court that issues a subpoena to a non-party may quash or modify the subpoena if it would require the non-party to disclose trade secrets or other confidential research, development, or commercial information, or subject the non-party to undue burden or expense in complying with the subpoena. *See* Minn. R. Civ. P. 45.03. A party may move the court for protection from annoying, embarrassing, oppressive, or unduly burdensome discovery requests for good cause shown. *See* Minn. R. Civ. P. 26.03.

The Minnesota state court clearly considered the level of annoyance and burden to Questar in responding to the Subpoena when Questar sought the protections of the safeguards set

forth in Rule 45.  In considering Questar's objections to the Subpoena, the state court specifically

found SMG's "discovery requests are reasonably calculated to lead to the discovery of

admissible evidence for [SMG's] claims against [Questar]."  In ordering Questar to fully comply

with the Subpoena pursuant to the entry of an "attorneys eyes only" protective order, the court

specifically determined that Questar had failed to demonstrate a sufficient reason for quashing

the Subpoena:

> [Questar] failed to demonstrate any evidence of why good cause exists to shelter
> [Questar] from all of [SMG's] discovery requests in all respects.  [Questar] relies
> wholly on the competitive relationship between itself and [SMG] to argue that
> even an "attorneys eyes only" protective order would ignore the reality that the
> information services industry is "highly competitive."  However, [Questar]
> presents no evidence to meet its burden that disclosing its confidential and
> proprietary survey and analysis techniques or existing and potential client pool to
> [SMG's] attorneys would damage [Questar's] business, and it should be a rare
> case in which highly sensitive business confidences, relevant to a civil law suit,
> should be entirely unavailable through discovery.

Moreover, the language of Questar's own arguments to the Minnesota state court in

seeking to avoid compliance with the Subpoena indicates the court had the opportunity to

consider whether SMG had an ulterior purpose in issuing the Subpoena to Questar.  For example,

Questar argued SMG was "using the discovery process to reach information to which it had no

legal right."  Questar claimed SMG's request for production of documents pertaining to client's

evaluations of Questar's proposals was "a naked abuse of the judicial process used to advance

[SMG's] business objectives," and urged the court to "fashion a protective order that ends this

fishing expedition by a competitor."  In its opposition to SMG's subsequent Motion for

Contempt, and on the basis of Fromm's deposition testimony discussed above, Questar once

again asked the Minnesota state court to dismiss the Subpoena:

> [I]t is clear that SMG had no basis to assert the Missouri Action against Mr.
> Wunder, and, more importantly, SMG had no factual basis to drag Questar into
> this litigation through third party discovery and the unwarranted use of the

> subpoena power.  What first appeared to be a monumental fishing expedition by
> SMG has now revealed itself to be something more.  It seems self-evident that
> SMG was intent on obtaining confidential and proprietary information of both
> Questar and Walgreen to inflict damage on its direct competitor.

Notwithstanding Questar's allegations of improper conduct by SMG, the Minnesota state court

again ordered Questar to fully with the Subpoena.

On the basis of this record, no reasonable jury could conclude that SMG had an ulterior

purpose in asserting the Counterclaim or in seeking issuance of the Subpoena.  Questar has failed

to demonstrate an issue for trial regarding the first element of its abuse of process claim.

          *b.*       *Improper Use*

The second element in an abuse of process claim under Minnesota law is the act of using

the process to accomplish a result not within the scope of the proceedings in which it was issued.

*See Hoppe*, 28 N.W.2d at 786.  Questar contends SMG used the subpoena power it acquired in

the Missouri litigation to obtain Questar's confidential and proprietary information and gain a

competitive business advantage in the customer satisfaction research and consulting industry.

However, other than its own conclusory statements of this use by SMG, Questar fails to present

any evidence that an employee of SMG obtained or viewed the documents Questar produced to

SMG's attorneys in response to the Subpoena.  Fromm testified that to his knowledge no one at

SMG has reviewed any of the documents turned over by Questar in response to the Subpoena,

whether confidential, highly confidential, or otherwise.  This testimony stands unrebutted by

Questar.  Fromm also testified that SMG does not have possession of any Questar proposals

submitted by Questar to its clients or prospective clients.  This testimony also stands unrebutted

by Questar.  The evidence of improper use of the process by SMG consists only of Questar's

own speculative and conclusory assertions that SMG used the documents obtained though the

Subpoena to gain a competitive business advantage Questar.  Such speculation and conclusory

evidence cannot form the basis for the denial of summary judgment.  *See Stanback v. Best Diversified Prods. Inc.*, 180 F.3d 903, 909 (8th Cir. 1999); *Helfter*, 115 F.3d at 616.

In sum, viewing the record in the light most favorable to Questar, a reasonable jury could not conclude that SMG misused or misapplied the judicial process for an end other than that which it was designed to accomplish.  Consequently, SMG is entitled to summary judgment on the abuse of process claim in Count One.[4]

    *2.    Interference with Contract*

For the reasons stated above, the Court has granted Questar's Motion to Dismiss Count Two (Interference with Contract) with prejudice.  Therefore, SMG's request for summary judgment on Count Two is moot.

    *3.    Unfair Competition*

SMG contends it is entitled to summary judgment on Questar's unfair competition claim alleged in Count Three of the Complaint because the claim is wholly based on the allegations of interference with contract set forth in the now dismissed Count Two.  Under Minnesota common law, the tort of unfair competition can include tortious interference with contract, improper use of trade secrets, and an employee's breach of a duty of loyalty to his or her employer.  *United Wild Rice v. Nelson*, 313 N.W.2d 628, 632 (Minn. 1982); *Rehabilitation Specialists v. Koering*, 404 N.W.2d 301, 305 (Minn. Ct. App. 1987) (describing unfair competition is a general category of torts recognized by Minnesota courts to protect commercial interests).

Questar's allegations in Count Three repeat verbatim the allegations in Count Two with one additional paragraph alleging "[t]he above acts constitute unfair competition."  When asked by the Court at the motion hearing to explain the differences between Count Two and Count

---

[4]    In light of this conclusion, the Court need not consider the parties' arguments regarding collateral estoppel.

Three, counsel for Questar argued the allegations presented in the portion of the Complaint titled "Facts Common To All Claims" include assertions that SMG intended to personally harass Wunder in order to distract him and prevent him from productively performing his work as an employee of Questar. Questar contends these allegations independently support its unfair competition claim. In response, SMG argues these allegations of improper motive and resulting detriment to Wunder and Questar are outside the scope of the Complaint. As noted above, the Court agrees with SMG on this point.

An unfair competition claim must identify the underlying tort that is the basis for the unfair competition claim. *Zimmerman Group, Inc. v. Fairmont Foods of Minn., Inc.*, 882 F. Supp. 892, 895 (D. Minn. 1994). Given the dismissal of Questar's interference with contract claim, the Complaint fails to sufficiently allege another tort upon which the unfair competition claim can be based. SMG is entitled to summary judgment on Count Three.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.    Questar's Motion to Dismiss Count Two (Interference with Contract) [Docket No. 75] is GRANTED pursuant to the substance of this Order.

2.    SMG's Motion for Summary Judgment [Docket No. 86] is GRANTED IN PART AND DENIED IN PART AS MOOT.

3.    The Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 25, 2007

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

13